**REESE, LLP**
Michael R. Reese (Cal. Bar 206773)
*mreese@reesellp.com*
Sue J. Nam (Cal. Bar 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (Cal. Bar 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile:  (2120 253-4272

**LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, PA**
Matthew D. Schultz
*mschultz@levinlaw.com*
Brenton Goodman
*bgoodman@levinlaw.com*
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

*Counsel for Plaintiff & the Proposed Class & Subclass*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLEY PRIDGEN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHURCH & DWIGHT CO., INC..,<br><br>Defendant. | Case No. 19-cv-1683<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shelley Pridgen, individually and on behalf of all others similarly situated ("the Class"), brings this Class Action Complaint against Defendant Church & Dwight Co., Inc. ("C&D" or "Defendant") based upon C&D's misrepresentations to consumers concerning the number of loads that a container of its OxiClean stain remover is capable of treating. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## INTRODUCTORY FACTS

1. This is a class action on behalf of purchasers of Defendant C&D's OxiClean powdered "stain remover" line of products ("OxiClean" or "the Products"), for which Defendant makes unsubstantiated and inaccurate claims—both in advertising and on the Products' labels and packaging—that would mislead and have in fact misled reasonable consumers into purchasing and using the Products.

2. As described below, C&D's OxiClean line of products is extremely lucrative and is growing. It is central to C&D's business.

3. C&D has reaped substantial profits a few dollars at a time based upon its deceptive marketing of the Products. This case exemplifies why the class action procedure was adopted.

4. In short, C&D manufactures, markets and sells OxiClean, which includes a variety of products (e.g., liquid detergents, stain sticks, spray products, and such). This action pertains specifically to C&D's misrepresentations concerning its OxiClean powdered stain removers.

5. Although OxiClean powdered stain removers come in several styles, each style is substantially similar to the others in form and in function and all are sold in substantially similar packages making similar claims and including similar instructions, as can be seen in the Appendix to this Complaint identifying various styles.

6. The omissions and misrepresentations identified in this Complaint are virtually identical across all sizes and styles of OxiClean stain removers and the claims that form the basis of this action would be the same in all essential respects regardless of which style of the Products is considered. That is to say, whether one considers the "Versatile"

style or the "White Revive" style, or any other, the Products are substantially similar and the method of deception is the same.

7.   The nature of the deception is simple: C&D prominently displays in its marketing for all styles, and on the packaging for all styles, the number of laundry loads one may expect to treat from a container of OxiClean powdered "stain remover," e.g., 290 loads, 156 loads, 75 loads, etc.







8.  But the Products are not capable of removing even "typical stains" for the advertised number of loads.

9.   There is no indication on the front or back panel that the Products do not treat the advertised number of loads when filling the enclosed scoop to Line 2 (or 3 or 4). Indeed, because the Products are "*stain removers*," reasonable consumers would believe they could remove stains for the advertised number of loads when filling the scoop to Line 1. But the Products will not, in fact, remove "typical stains" for the advertised number of loads.

10.  Below is the front panel of OxiClean Versatile Stain Remover (3 lb.), which prominently declares that it treats 65 loads. Following that is an image of the side panel of the same product with a well-hidden disclaimer regarding the 65-load claim.





11.  It is difficult to find, if not pointed out, but buried at the bottom of the side panel, beneath the directions for use, beneath the warning, and beneath Defendant's contact information, in the last two lines, is the statement: "Delivers 65 regular loads/uses when measuring to line 1 on scoop."

12.  It is not clear what "delivering" a load means; but if it is intended to mean "treating" a load, it is a suspiciously ambiguous phrasing and that interpretation is belied by the back panel instruction that, in order to treat "typical stains," one must fill the scoop to at least Line 2:



13. In other words, to achieve the "stain removing" benefit of this *stain remover*, one must use more than the Line 1 amount on the scoop; or, said differently, one can treat only a fraction of the advertised number of loads for "typical stains," while heavier stains require even more powder, thus further reducing the load capacity of the Product.[1]

14. These ambiguities are no accident; they form a pattern of deception— prominently claiming on the front of the package to treat a certain number of loads while burying a microscopic, ambiguously worded disclaimer on the side panel. The deception's form and substance are substantively identical for all styles and sizes of the Products.

15. Even in the context of legally binding contracts, reasonable consumers typically do not "read all of the terms of the standardized agreements that they encounter in daily life," as it is "neither practical nor efficient for them to read all of their contracts thoroughly."[2]

16. Similarly, fewer than one-third of consumers "frequently" read the Nutritional Panel on the food products they buy to feed themselves and their families.[3]

17. Even fewer reasonable consumers read every inch of every consumer product package they make a purchase; and empirical research bears this out: "Rather than long explorations, deliberations and acts of choice, consumers are more likely to reach their

---

[1] Importantly OxiClean powdered stain remover "is not a laundry detergent." (https://www.oxiclean.com/en/AllProducts/Stain-Fighters/Products/OxiClean-Versatile-Stain-Remover). So it is unclear what it would mean to "deliver" an "ordinary load" filling the scoop to Line 1 when "typical stains" require filling it to Line 2. But the advertised number of loads, per the microscopic disclaimer, are "ordinary loads," not loads of stained clothing.

[2] Furth-Matzkin, Fool Me Once, Shame on Me: How Consumers and Lawyers Perceive the Fine Print in Deception Cases, *Discussion Paper No. 82* at 1, 7 (Harvard Law School, June 2018) (http://www.law.harvard.edu/programs/olin_center/fellows_papers/pdf/Furth_82.pdf).

[3] Cristoph, et al., Nutrition Facts Panels: Who Uses Them, What Do They Use, and How Does Use Relate to Dietary Intake, *J. Academy of Nutrition & Dietetics*, 118:2 at 217-228 (Feb. 2018).

decisions within a few seconds."[4] *Ninety percent (90%)* of consumers make a purchase "*only having examined the front of the product*."[5]

18.  Reasonable consumers routinely accept prominent front-of-packaging claims at face value and should not be expected to assume they are being deceived; it would be unreasonable to expect or demand that consumers pore over each product package to root out fine-print "disclaimers" that contradict selling points prominently displayed on the front of the package. Rather, consumers reasonably expect other package information to be consistent with the representations made on the front of the package.

19.  All or a significant proportion of consumers acting reasonably under the circumstances would conclude that a "stain remover" prominently claiming to treat a designated number of laundry loads would in fact effectively remove stains from the number of loads represented on the front of the packaging. OxiClean powdered stain removers, contrary to Defendant's representations, fail to do so.

20.  Damages are warranted to make C&D's consumers whole and to ensure that clever marketing does not reap C&D unwarranted economic gain—which either disadvantages competitors who play by the rules or incentivizes them to deceive consumers, as C&D has, in order to compete.

## PARTIES

21.  Plaintiff Shelley Pridgen is and was at all relevant times a citizen and domiciliary of Santa Ana, California, which is located in this District and Division.

22.  Defendant Church & Dwight Co., Inc., is a Delaware for-profit corporation with its principal place of business in Ewing, New Jersey. It may be served with process through its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

---

[4] J. Clement et al., Understanding consumers' in-store visual perception: The influence of package design features on visual attention, *J. of Retailing & Consumer Servs.* 20 (2013) 234-239 at 234.

[5] *Id.* at 235 (emphasis added).

## JURISDICTION

**Personal Jurisdiction**

23. This Court has specific personal jurisdiction over Defendant C&D because this action arises out of and relates to C&D's contacts with this forum.

24. Defendant is registered to do business in the State of California and engages in business within the state and within this District. C&D directed the Products through the stream of commerce into this District. C&D has advertised and marketed within this District through sales representatives, through the wires and mails, and via e-commerce websites through which residents of this state and District can purchase the Products.

25. As depicted below, C&D's website www.oxiclean.com/en is directed to consumers in this District and includes a "where to buy" feature that points consumers in this District to local OxiClean retailers based on zip code:



26. Thus, C&D knowingly directs electronic activity into this state and District with the intent to engage in business interactions and it has in fact engaged in such interactions.

27. C&D sold the Products to retailers in this District for the purpose of making them available for purchase by consumers, including Plaintiff, in this District.

28. Plaintiff's losses and those of other Class members were incurred in this District.

**Subject Matter Jurisdiction**

29. This Court has original subject matter jurisdiction over this action pursuant to CAFA, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

30. Plaintiff is diverse from Defendant and Plaintiff seeks to represent other Class members who are diverse from Defendant.

31. The matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs and the "number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

**Venue**

32. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

33. Defendant caused the Products to be offered for sale and sold to the public, including Plaintiff, in this District. Plaintiff purchased the Products in this District and incurred her losses in this District. Likewise, many other Class members purchased the Products in this district.

34.  Venue is proper pursuant to 28 U.S.C. § 1391(c)(2) because Defendant is deemed a resident of this District by virtue of this Court's personal jurisdiction over Defendant with respect to this civil action.

## ADDITIONAL FACTUAL ALLEGATIONS

**Marketing & Sales of the Products**

35.  OxiClean is manufactured, marketed, distributed, and sold by C&D.

36.  OxiClean powdered stain removers are designed to remove stains from clothing and are promoted by C&D through marketing, advertising, and product labeling as fit for that purpose.

37.  OxiClean is sold "through a broad distribution platform that includes supermarkets, mass merchandisers, wholesale clubs, drugstores, convenience stores, home stores, dollar, pet and other specialty stores and websites and other e-commerce channels, all of which sell the products to consumers."[6]

38.  C&D's "growth" as a company is "driven by 11 power brands," including OxiClean—the "#1 Laundry Additive Brand."[7]

39.  C&D's "power brands" account for more than 80% of C&Ds revenues and profits, with revenues having exceeded $4 billion in 2018.[8]

40.  C&D's laundry products—including OxiClean stain removers—constitute its "largest consumer business, measured by net sales."[9]

41.  C&D's line of OxiClean powdered stain removers includes several styles, all of which are substantially similar in purpose and function, and all of which contain substantively identical claims and instructions on their packages.

42.  The OxiClean line of stain removers includes at least the following:[10]

---

[6] C&D Annual Report, Appx. (10-K) at 30.

[7] C&D 2018 Annual Report at 1.

[8] C&D 2018 Annual Report at 3.

[9] C&D Annual Report, Appx. (10-K) at 2.

[10] Also see the Appendix which includes sample images of the Products. Images were obtained by visiting https://www.oxiclean.com/en/Where-To-Buy, clicking on each stain remover product

| Style/Sub-Brand | Available Sizes |
|---|---|
| (a) OxiClean Versatile Stain Remover<br> | • 1.77 lb./28.32 oz. ("38 loads")<br>• 3 lb./48 oz. ("65 loads")<br>• 5 lb./80 oz. ("108 loads")<br>• 7.22 lb./115.52 oz. ("156 loads")<br>• 10.1 lb./161.6 oz. ("252 loads") |
| (b) OxiClean Versatile Stain Remover "Free"<br> | • 3 lb./48 oz. ("65 loads")<br>• 3.5 lb./56 oz. ("75 loads" and "15% more loads") |
| (c) OxiClean with Odor Blasters Versatile Stain &     Odor Remover<br> | • 3 lb.48 oz. ("57 loads")<br>• 5 lb./115.52 oz. ("95 loads") |
| (d) OxiClean White Revive Laundry Whitener + Stain   Remover<br> | • 3 lb./48 oz. ("45 loads")<br>• 5 lb./80 oz. ("75 loads") |
| (e) OxiClean Baby Stain Remover | • 3 lb./48 oz. ("65 loads") |

and following the links provided for each product, e.g., to Jet.com or other such sites (6/20/19).



43. C&D produces and sells millions of units of the subject OxiClean Products in the United States each year.

44. C&D placed the Products in the stream of commerce and distributed, offered for sale, and sold the Products to consumers including Plaintiff and Class members in California and throughout the United States.

45. C&D researched, developed, designed, manufactured, marketed, advertised, sold, and warranted the Products.

46. As noted above, C&D's website www.oxiclean.com/en includes a "Where to Buy" feature that directs consumers to online retailers like amazon.com and jet.com as well as brick-and-mortar retailers like Target and Wal-Mart.

47. OxiClean advertising—including advertising on C&D's website www.oxiclean. com/en—claims "OxiClean gets the tough stains out!"

48. Similarly, C&D airs video advertisements on television and on the internet, including in social media, as exemplified by the still-shots below from OxiClean's "official" Facebook page, depicting filthy football uniforms and announcing: "OxiClean. It gets the tough stains out!"[11]



---

[11] https://www.facebook.com/pg/OxiClean/videos/?ref=page_internal

49. C&D has published many similar ads, all of which—naturally enough—focus on OxiClean's stain–removing benefits and many of which prominently display the number of loads consumers may expect to treat, as exemplified by the video advertisement below, which is accompanied by the claim: "Back-to-school stains are dismissed with OxiClean. Learn to remove ink stains in the video below."[12]



---

[12] https://www.facebook.com/OxiClean/videos/vb.211572328868863/1467833533 242730/?type=2&theater.

50. But as seen above, if a consumer is to remove even "typical stains" with this self-named, so-called *stain remover* from clothes, then the consumer can treat only a fraction of the number of loads prominently claimed on the front of the Product package.

51. C&D's representations lead reasonable consumers to believe that a container of OxiClean stain remover will remove stains from the advertised number of loads and reasonable consumers would not expect to find a statement in fine print that reneges on the "number of loads" claim made prominently on the front of the container.

52. But indeed the disclaimer buried in fine print and indeed it reneges on the "number of loads" claim—the container won't treat "typical stains" for the advertised number of loads and to remove "tough stains," one may only be able to treat 1/3 or 1/4 of the claimed number of loads.

53. The sub-brands of OxiClean stain removers are substantially similar products with virtually identical disclaimers that are consistently presented in tiny print on the side panels of the Products, as seen in the images appended to this complaint, one of which is reproduced below as an example.

 

**Plaintiff's Purchase & Economic Injury**

54. Plaintiff Shelley Pridgen purchased OxiClean Versatile Stain Remover ("65 loads") in or about May of 2019 at a Target store in Santa Ana, California.

55. Plaintiff has seen OxiClean advertising in the past and is familiar with the Defendant's claims regarding OxiClean's stain-removing benefits.

56. In purchasing the Product, Plaintiff reasonably relied upon the "number of loads" claim on the front of the package and reasonably believed the Product would treat 65 loads, as claimed.

57. Plaintiff followed the instructions for use and, accordingly, was unable to treat the number of loads Defendant claimed the Product would treat. Instead, the Product treated a fraction of that represented on the front of the packaging.

58. C&D intended for consumers to rely upon its representations concerning the number of loads a container would treat.

59. It would be reasonable for consumers to rely upon C&D's representations concerning the number of loads a container would treat—as Plaintiff did—and to believe—as Plaintiff did—that a stain remover claiming it is capable of providing stain-removing treatment for, e.g., 65 loads of laundry, would in fact be capable of providing stain-removing treatment for 65 loads of laundry.

60. C&D's representations concerning the number of loads a container would treat were made with the intent to generate and increase sales of the Products.

61. C&D's representations concerning the number of loads a container would treat were deceptive and misleading for the reasons set forth throughout this Complaint.

62. By representing the number of loads each Product purportedly would treat, C&D implicitly represented the Product's value to Plaintiff and other consumers.

63. That representation was false, however, because, based on C&D's instructions, the Products were effectively under-filled, such that Plaintiff and other consumers received a Product of different and substantially lesser value—one with a higher effective cost—than C&D represented.

64.  Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

65.  In addition, Plaintiff and the Class paid substantially more than the market value represented by the price bargained for. Plaintiff and the Class bargained with C&D on a particular market value for a certain number of loads per container. But because C&D only delivered a portion of those loads, Plaintiff and the class paid a price-per-load that was significantly higher than reflected in the market price to which they and C&D had agreed, and received a number of loads that was significantly lower than C&D promised.

66.  For these reasons, the Products are worth less than Plaintiff and the Class paid for them.

67.  Thus, through the use of misleading representations as to the number of loads the Products would treat—and thereby the Products' value—C&D obtained enhanced negotiating leverage allowing it to command a price Plaintiff and the Class would not have paid had they been fully informed.

68.  The cost of the Products would have been lower absent Defendant's false and misleading representations.

69.  Absent the false and misleading representations, Plaintiff and the Class would only have been willing to pay less for the Products.

70.  By use of its misleading marketing and labeling, C&D created increased market demand for the Products and increased its market share relative to what its demand and share would have been had C&D marketed and labeled the Products truthfully.

71.  Plaintiff and the Class lost money as a result of C&D's misrepresentations in that they did not receive what they reasonably believed they were paying for based upon the misrepresentations while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it led them to believe they would receive.

72.  Plaintiff and the Class detrimentally altered their position and suffered

damages in an amount of the under-filled portion of their OxiClean purchases.

## CLASS ACTION ALLEGATIONS

73. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of a proposed class and subclass defined as follows:

**The National Class.** All persons in the United States who purchased any OxiClean powdered stain remover whose label stated that the product would treat a specified number of loads, which purchases were for personal use and not for resale or distribution.

**The California Subclass.** All persons in the State of California who purchased any OxiClean powdered stain remover whose label stated that the product would treat a specified number of loads, which purchases were for personal use and not for resale or distribution.

Excluded from the National Class and California Subclass are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person who timely and properly excludes himself or herself from the Class.

74. Plaintiff reserves the right to alter the Class and Subclass definitions as necessary at any time to the full extent permitted by applicable law.

75. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class and Subclass members would use to prove those elements in individual actions alleging the same claims.

76. For convenience and simplicity, Plaintiff refers to the National Class and the California Subclass collectively as "the Class" or "Class members," except where they are expressly distinguished.

77. **Numerosity – Rule 23(a)(1):** The size of the Class is so large that joinder of

all Class members is impracticable. C&D claims that the Products are America's #1 laundry additives and C&D has reported to the SEC that the Products are one of its 11 "power brands," which account for 80% of C&D's revenues.

78. There are hundreds of thousands, if not millions, of Class members geographically dispersed throughout the United States.

79. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3):** There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions/issues include but are not limited to:

a.   what representations Defendant has made regarding the Products over time;

b.   whether, when the Products are used according to Defendant's instructions, they treat the advertised/stated number of loads;

c.   whether reasonable consumers would deem material Defendant's advertised/stated number of loads;

d.   whether Defendant intended for Plaintiff, the Class members, and others to rely upon Defendant's representations in purchasing and using the Products;

e.   whether Defendant foresaw that purchasers would rely upon Defendant's representations in purchasing and using the Products;

f.   whether reasonable consumers believe the Products will remove stains for the advertised/stated number of loads;

g.   whether Defendant knew or should have known its representations were misleading in light of all the facts and circumstances;

h.   whether the Products were warranted;

i.   whether Defendant properly disclaimed any warranty;

j.   whether any limitation on warranty fails to meet its essential purpose;

k.   whether Defendant's conduct violates public policy;

l.   the proper calculation and amount of damages;

m.   the proper amount of restitution;

n.   the proper scope of injunctive relief;

o.   the proper amount of attorneys' fees.

80.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

81.   In short, these common questions of fact and law predominate over questions that affect only individual Class members.

82.   **Typicality – Rule 23(a)(3):** Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events and circumstances relating to C&D's conduct. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

83.   There are no defenses available to Defendant that are unique to the named Plaintiff.

84.   **Adequacy of Representation – Rule 23(a)(4):** Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

85.   Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

86.   **Superiority – Rule 23(b)(3):** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the

following reasons:

    a.   the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct;

    b.   it would thus be virtually impossible for individual Class members to redress the wrongs done to them and they would have little incentive to do so;

    c.   the class action procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court;

    d.   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant;

    e.   were Class members to bring individual actions, the prosecution of those actions would create a risk of adjudications that could prove dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

87.  C&D has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

88.  **Notice:** Plaintiff and Plaintiff's counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## **CLAIMS FOR RELIEF**

### **COUNT I: Violations of California's Consumers Legal Remedies Act (Cal. Civil Code § 1750, *et seq.*) on Behalf of the California Subclass (Injunctive Relief Only)**

89. The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

90. Plaintiff and the Subclass members are "consumers" as defined in California Civil Code **§** 1761(d).

91. The Products are "goods" as defined in California Civil Code § 1761(a).

92. Defendant is a "person" as defined in California Civil Code § 1761(c).

93. Plaintiff's and the Subclass members' purchases of the Products are "transactions" as defined in California Civil Code § 1761(e).

94. Defendant's representations and omissions concerning the quality, benefits and effectiveness of the Products were false and/or misleading as alleged herein.

95. Defendant's false or misleading representations and omissions were made to the entire Subclass and were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

96. Defendant knew or should have known its representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Subclass.

97. Defendant's practices, acts, and course of conduct in marketing and selling the Products were and are likely to mislead reasonable consumers acting reasonably under the circumstances to their detriment and in fact consumers were misled.

98. Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Subclass members, which violated and continues to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, benefits, or quantities that they do not have;

    b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

99.  Defendant profited from the sale to unwary customers of the falsely, deceptively, and unlawfully advertised and labeled Products.

100.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

101.  Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Subclass member.

102.  Plaintiff sent notice to Defendant pursuant to Cal. Civ. Code § 1782(a), but the 30-day response period has not elapsed; thus Plaintiff seeks no damages pursuant to this Count, but will amend this Complaint at the appropriate time to claim damages.

103.  Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief—including injunctive relief requiring Defendant to cease and desist from further misrepresenting the Products as described herein—reasonable attorney's fees and costs, and any further injunctive or equitable relief the Court deems proper.

### COUNT II: Violations of California's False Advertising Law
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) on Behalf of the California Subclass

104.  The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

105.  It also is unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

106.  As alleged herein, Defendant's advertisements, labeling, policies, acts, and practices relating to the Products were and are deceptive and misleading.

107.  As alleged herein, Defendant's advertisements, labeling, policies, acts, and practices misled consumers acting reasonably—including Plaintiff and the Subclass members—about the quality, benefits, and effectiveness of the Products, including Plaintiff and the Subclass members.

108.  Plaintiff and the Subclass members suffered injury-in-fact as a result of Defendant's actions as set forth herein because, as reasonable consumers, they purchased the Products in reliance on Defendant's false and misleading labeling claims concerning the Products' quality, benefits, and effectiveness.

109.  Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and because Defendant omitted material information from its advertising and labeling.

110.  Defendant profited from sale of the falsely and deceptively advertised Products to reasonable but unwary consumers including Plaintiff and the Subclass members and Defendant has thereby been unjustly enriched.

111.  As a result, Plaintiff, the Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

112.  Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Subclass, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint as well as any further injunctive or equitable relief the Court deems proper.

## COUNT III: Violations of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) on Behalf of the California Subclass

113.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

114.  Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

115.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff and the Subclass, as to the benefits and effectiveness of the Products.

116.  **Unlawful**: The acts alleged herein are "unlawful" under the UCL in that they violate at least (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (b) and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

117.  **Unfair**: The acts alleged herein are "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to their victims, including Plaintiff and the Subclass.

118.  The acts alleged herein also are unfair because they violate public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

119.  The acts alleged herein are unfair because the consumer injury was substantial, was not outweighed by benefits to consumers or competition, and was not one consumers could reasonably have avoided.

120.  Reasonable consumers, including Plaintiff and the Subclass members, purchased the Products believing they were beneficial and effective as claimed by Defendant when in fact they were not—a fact of which consumers could not reasonably have become aware.

121.  **Fraudulent**: A statement or practice is "fraudulent" under the UCL if it is

likely to mislead or deceive the public, applying an objective reasonable consumer test.

122.  The acts alleged herein, including Defendant's representations and omissions about the quality, benefits, and effectiveness of the Products, are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's representations and omissions.

123.  Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and labeled/packaged Products to unwary consumers.

124.  Defendant's conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and the Subclass members.

125.  Plaintiff and the Subclass have suffered injury-in-fact as a result of Defendant's unlawful conduct including but not limited to the damages described above.

126.  Plaintiff and the Subclass members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging and through the marketing and advertising of the Products. Thus, injunctive relief enjoining Defendant's deceptive practices is appropriate.

127.  In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

128.  Plaintiff and the Subclass seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through unlawful competition.

**COUNT IV: Breach of the Implied Warranty of Merchantability**
**(Cal. Civil Code §§ 1791–1792 & 1794) on Behalf of the California Subclass**

129.  California Civil Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability.

130.  The Products are "consumer goods" within the meaning of California Civil Code § 1791 as they are bought for use primarily for personal, family, or household

purposes.

131.  Plaintiff and the Subclass members are "buyers" of the Products within the meaning of California Civil Code § 1791(b).

132.  Defendant is the "manufacturer" of the Products within the meaning of California Civil Code § 1791(j).

133.  Defendant failed to comply with the obligations of California Civil Code §§ 1791-1792 and thereby caused damage to Plaintiff and the Subclass.

134.  Specifically, Defendant manufactured, tested, advertised, promoted, marketed, sold, and distributed the Products.

135.  At the time Defendant manufactured, tested, advertised, promoted, marketed, sold, and distributed the Products, Defendant knew of the particular purposes for which the Products were intended and impliedly warranted the Products to be of merchantable quality.

136.  Defendant breached the implied warranty of merchantability and the Products were not of merchantable quality because: (a) the Products were mislabeled; (b) the Products lacked a minimum level of quality that reasonable consumers would expect; (c) the Products would not pass without objection in the trade; (d) the Products were not fit for ordinary purposes for which such goods are used insofar as they would not adequately treat the number of loads claimed; (e) for the same reason, the Products did not conform to the promises or affirmations of fact made on the container and/or label; and (f) the Products did not have the quality that reasonable buyers, including Plaintiff and the Subclass members, would expect.

137.  Defendant did not at any time properly disclaim the implied warranty of merchantability.

138.  Plaintiff and the Subclass members were damaged by Defendant's failure to comply with its statutory obligations and under the implied warranty of merchantability and, therefore, Plaintiff and the Subclass members are entitled to recover damages, including but not limited to those described above; and they are entitled to other legal and

equitable relief.

139.  More specifically, Defendant's breach of the warranty caused Plaintiff and the Subclass economic harm for which Plaintiff and the Subclass members are entitled to monetary damages, costs, reasonable attorney's fees, and appropriate equitable relief including injunctive relief requiring Defendant to cease and desist from further misrepresenting the Products as described herein and any further injunctive or equitable relief the Court deems proper.

## COUNT V: Violation of Various State Consumer Protection Laws
## On Behalf of the National Class

140.  Plaintiff brings this claim for deceptive acts and practices in violation of various states' consumer protection statutes against Defendant on behalf of the National Class.

141.  Defendant has engaged in deceptive acts and unfair practices that have caused actual damages to Plaintiff and the National Class, as described herein, including the misrepresentations and omissions described with respect to the marketing, advertising, promotion, packaging, labeling, and sale of the Products.

142.  Defendant's deceptive and unfair trade practices have been carried out in the course of conducting Defendant's business, trade, and commerce

143.  Defendant's acts—including its intentional efforts to mislead consumers regarding the benefits and effectiveness of the Products—are willful, unfair, unconscionable, deceptive, contrary to public policy, and injurious to consumers.

144.  Defendant's false, deceptive, and misleading statements and omissions would be material to any reasonable consumer's decision whether to buy the Products.

145.  Any objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices.

146.  Defendant's acts are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being, and are motivated solely by the desire for financial gain.

147.  As a direct and proximate result of Defendant's deceptive practices, Plaintiff and the National Class have sustained actual damages including but not limited to those described above.

148.  Plaintiff and the National Class demand damages, attorney's fees and costs, and any other equitable or legal relief to which they may be entitled.

149.  Plaintiff's claims are representative of similar claims available to National Class members under the laws of other states, which also are amenable to further subclass treatment, particularly where the counterpart laws require no showing of reliance or employ an objective reliance standard. Such laws may include, but are not limited to: Ala. Code §§ 8-19-1 *et seq.*; Alaska Stat. § 45.50.471; Ariz. Rev. Stat. Ann. §§ 44-1521 *et seq.*; Ark. Code Ann. § 4-8-01, *et seq.*; Cal. Civil Code §§ 1750 *et seq.* and Cal. Bus. & Prof. Code §§ 17200 et seq.; Colo. Rev. Stat. §§ 6-1-05 *et seq.*; Conn. Gen. Stat. Ann. §§ 42-110a *et seq.*; Del. Code Ann. Tit. 6 §§ 2511 *et seq.* & 2531 *et seq.*; D.C. Code Ann. §§ 28-3901 *et seq.*; Fla. Stat. §§ 501.201 *et seq.*; Ga. Code Ann. §§ 10-1-372 and 10-1-420; Haw. Rev. Stat. §§ 480-1 *et seq.*; Idaho Code §§ 48-601 *et seq.*; 815 Ill. Comp. Stat. 505/1 *et seq.*; Ind. Code Ann. 24-5-0.5-3; Iowa Code § 714.16; Kan. Stat. Ann. §§ 50-623 *et seq.*; Ky. Rev. Stat. Ann. § 367.170; La. R.S. §§ 1401 *et seq.*; Me. Rev. Stat. Ann tit. 5, §§ 205-A *et seq.*; Md. Code Ann., Com. Law §§ 13-301 *et seq.*; Mass. Gen. Laws ch. 93A, §§ 1 *et seq.*; Mich. Comp. Laws Ann. §§ 445.901 *et seq.*; Minn. Stat. §§ 325D.44 *et seq.*; Miss. Code Ann. §§ 75-24-1 *et seq.*; Mo. Ann. Stat. §§ 407.010 *et seq.*; Mont. Code Ann. §§ 30-14-101 *et seq.*; Neb. Rev. Stat. Ann. §§ 59-1601 *et seq.*; Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.*; N.H. Rev. Stat. Ann. §§ 358-A:1 *et seq.*; N.J. Stat. Ann. §§ 56:8-1 *et seq.*; N.M. Stat. Ann. §§ 57-12-1 *et seq.*; N.C. Gen. Stat. §§ 75-1 *et seq.*; N.D. Cent. Code §§ 51-12-01 *et seq.* and 51-15-01 *et seq.*; Ohio Rev. Code Ann. §§ 1345.01 *et seq.*; Okla. Stat. Ann. Tit. 15, §§ 751 *et seq.*; Or. Rev. Stat. §§ 646.605 *et seq.*; 73 Pa. Cons. Stat. §§ 201-1 *et seq.*; R.I. Gen. Laws §§ 6-13.1-1 *et seq.*; S.C. Code Ann. §§ 39-5-10 *et seq.*; S.D. Codified Laws §§ 37-24-1 *et seq.*; Tenn. Code Ann. § 47-18-109(a)(1); Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.*; Utah Code Ann. §§ 13-11-1 *et seq.*; Vt. Stat. Ann. Tit.

9, §§ 2453 *et seq.*; Va. Code Ann. §§ 59.1-196 *et seq.*; Wash Rev. Code Ann. §§ 19.86.010 *et seq.*; W. Va. Code 46A-6-101 *et seq.*; Wis. Stat. Ann. § 100.18; and Wyo. Stat. Ann. §§ 40-12-101 *et seq.*

## COUNT VI: Unjust Enrichment
### On Behalf of the National Class & California Subclass

150.  By way of its wrongful acts and omissions, Defendant charged, and Plaintiff and the Class and Subclass members paid, a higher price for the Products than that which reflects their true value and Defendant accordingly obtained monies that rightfully belong to Plaintiff and the Class and Subclass members, including but not limited to monies obtained as described in ¶¶ 65-75.

151.  Plaintiff and the Class and Subclass members conferred a benefit on Defendant by purchasing the Products.

152.  Defendant received a direct benefit from Plaintiff and the Class and Subclass members in the form of Product sales, increased market share for the Products, and resulting profits.

153.  Defendant knowingly accepted the unjust benefits of its fraudulent conduct, including the gains described in the preceding paragraph and above of this Complaint, to the detriment of Plaintiff and the Class and Subclass members. It would be inequitable and unjust for Defendant to retain these wrongfully obtained gains and benefits.

154.  Accordingly, Plaintiff, on behalf of herself and the Class and Subclass, seeks an order requiring Defendant to disgorge all unwarranted profits and to make restitution to Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class and Subclass, respectively, respectfully request the Court to enter an Order or Orders that:

A.   certify the proposed National Class and California Subclass under Federal Rule of Civil Procedure 23(a)  and (b)(3), as set forth above, naming Plaintiff as Class and Subclass representative and appointing Plaintiff's counsel as Class and Subclass counsel;

B.   declare that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.   award monetary damages including but not limited to any compensatory, incidental, consequential and/or punitive damages in an amount that the Court or jury will determine, in accordance with applicable law and in accordance with the above allegations;

D.   provide for restitution and disgorgement;

E.   enjoin Defendant from further misrepresentations or material omissions in their marketing, advertising, packages, packaging, labels, and labeling for the Products while requiring Defendant to commence with a corrective advertising campaign and provide any further injunctive, declaratory, or equitable relief the Court deems appropriate;

E.   award Plaintiff's reasonable costs and expenses of suit, including attorney's fees;

G.   award pre- and post-judgment interest to the extent the allowed in law or in equity; and

H.   provide such further relief in law or equity as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated this 3d day of September, 2019.

**REESE LLP**

*/s/ Michael R. Reese*
Michael Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
George V. Granade II
*ggranade@reesellp.com*
8484 Wiltshire Blvd, Suite 515
Los Angeles, California 90211
Tel: (212) 643-0500

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matthew D. Schultz (PHV forthcoming)
*mschultz@levinlaw.com*
Brenton Goodman (PHV forthcoming)
*bgoodman@levinlaw.com*
316 S. Baylen St., Suite 600
Pensacola, Florida 32502
Tel: (850) 435-7140
Fax: (850) 436-6140

*Counsel for Plaintiff & the Proposed Class & Subclass*

# APPENDIX: IMAGES OF OXICLEAN STAIN REMOVER PRODUCTS
## (Red box superimposed over disclaimer.)

(a) OxiClean Versatile Stain Remover





(b)  OxiClean Versatile Stain Remover "Free"





(c)  OxiClean Odor Blasters Versatile Stain Remover



(d) OxiClean White Revive Laundry Whitener + Stain Remover





(e) OxiClean Baby Stain Remover



